JOHN FARRELL and Others, Appellants, Impleaded with MARY A. BRACKEN, Plaintiff, v. JENNIE M. BRADY and Others, as Executrices, etc., of JOHN J. BRADY, Deceased, Respondents.

Second Department, April 9, 1920.

**Trusts — suit to compel accounting as to proceeds of trust property brought after death of trustee and more than twenty-five years after his accounting — complaint dismissed.**

Suit to reopen an accounting as to the proceeds of the sale of lands, some of which were held in a fiduciary capacity in trust for a partnership and some of which were not subject to said trust, brought after the death of the trustee and more than twenty-five years after he had made a final accounting and settlement to which no objection had been made. Evidence examined, and *held*, to disclose no basis whatever for the action and that the complaint was properly dismissed.

APPEAL by the plaintiffs, John Farrell and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 13th day of December, 1917, upon a decision of the court rendered after a trial at the Westchester Special Term dismissing the complaint upon the merits.

In 1890, Mr. John J. Brady, of Fordham, a real estate lawyer, joined with six persons in a copartnership venture to buy, develop and resell a large property from Messrs. Haskin & Tappen, called the " Ryer Homestead." After Mr. Brady had examined the title, the purchase was consummated by a deed taken October 29, 1890, in the name of Lucy A. Mason, who gave back a mortgage for $87,000. She held the same in trust for the seven copartners in equal shares. This tract was mapped, graded, cut up into lots numbered from 1 to 227 inclusive. Certain of these were disposed of at private

sale. Lots on this map, numbered 25 to 30, were conveyed to Mary Seiferd. The lots remaining Lucy A. Mason conveyed to Mr. Brady, who received them under his declaration of trust, dated September 26, 1891, recognizing and attesting that " the premises so conveyed to me by said Lucy A. Mason, is held by me in trust for Edward P. Steers, Isaac Anderson, Mary Bracken, Otto Wagner, Peter Farrell, Agnes K. Murphy and myself, and that each of the persons above named [is] entitled to one undivided seventh of said premises and that I am entitled to only one undivided seventh part thereof. Such interest being subject to the mortgage thereof made by said Lucy A. Mason to said Haskin and Tappen."

On September 23, 1891, Mary Seiferd also conveyed her lots to Brady, but these were excepted from the lands recited in the declaration of trust. On October 5, 1891, there was an auction sale of all of these lots, at 59 Liberty street, New York, which yielded $179,560. Miss Agnes K. Murphy was present and participated in the sale, and from her membership in the Exchange received a part of the auctioneer's commissions. The lots from Mrs. Seiferd were also then auctioned off. They realized $12,775 and were separately reported by the auctioneer.

On November 21, 1891, Mr. Brady accounted with the associate owners, whereby he paid to Miss Agnes K. Murphy, as treasurer, two checks (one before, on November eleventh), aggregating $78,103.37, in final distribution of such proceeds. Mr. Brady was paid for his legal services on or about December 3, 1891. Such adjustment was acquiesced in by all parties as a final settlement. Mr. Brady continued to reside in Fordham. In the election of November, 1906, he was chosen justice of the Supreme Court. He entered on his duties January 1, 1907, and died in office on January 7, 1916.

No suggestion to reopen this final accounting was ever made in his lifetime. So far as this record shows, the first intimation of any dissatisfaction with this final settlement was a written demand by Sarah N. Anderson, addressed to the executors of Mr. Brady's will, about June 19, 1917, which document, however, was not put in evidence, as a demand before suit was admitted.

This action was begun July 2, 1917, over twenty-five years after this accounting and settlement. It was tried at

Special Term in December, 1917. On the trial, Mary A. Bracken withdrew as plaintiff. The plaintiffs John Farrell and Sarah N. Anderson joined in the notice of appeal, but they took no part in making a case on appeal, so that as to them the appeal has been dismissed.

Edward T. Mulligan, as assignee by assignment June 5, 1917, of Mrs. Agnes K. Mulligan (formerly Miss Agnes K. Murphy), is now the sole appellant.

*Hugo Hirsh* [*Edward T. Mulligan*, in person, with him on the brief], for the appellant Mulligan.

*George H. Taylor, Jr.* [*Thomas C. Patterson* with him on the brief], for the respondents.

PUTNAM, J.:

The complaint herein charged that Brady had dealt improperly with this trust; in substance that he had failed to account. It did not aver when the plaintiffs claimed to have first learned of the basis for such charges, or what were the impediments to an earlier prosecution of such claim, or how they explained or excused their long and unreasonable *laches*. The bill of particulars indicated as plaintiffs' theory that, notwithstanding Brady's accounting in 1891 and the omission of any after-claims on him in his lifetime, his representatives were under the burden of accounting for any subsequent transactions standing in Brady's name, relating to the Ryer Homestead lots, or as to any mortgages thereon, in which Brady had any interest.

A close examination of this record shows no basis whatever for asserting that Brady had not accounted for any of this trust property. The lots conveyed by Mason to Mrs. Seiferd were never part of this trust. Although the Seiferd lots were included in this auction sale, they were distinct, and the proceeds separately reported by the auctioneer. Therefore, the court at Special Term rightly found that these lots " were not subject to any trust in the hands of said John J. Brady."

Like most of such urban developments, these sales of lots, bounded by lines of projected streets not yet opened, did not pass title to such street beds, and (where afterwards the public streets· diverged from the platted lines of the develop-

ment) left gores, that Brady subsequently conveyed, or became the basis of an award in street opening proceedings. These gores passed by public recorded deeds; or in one instance through condemnation proceedings to which Miss Agnes K. Murphy was a party defendant, resulting in an award of $188.60, which Brady received. If this award be claimed as applicable to this trust, the appellant's proportion (one-seventh), being less than $27, never questioned by any of the syndicate, must be regarded as waived, no doubt for the reason that such insignificant gores and street beds were deemed of only nominal value, not more than enough to compensate for a conveyance, or for making proof of title in condemnation proceedings.

In such aggregate sales of over 200 building lots, where part of the purchase price was left on mortgage, it would have been extraordinary to find that every successful bidder carried out his purchase. In case the bidder did not meet the terms of sale, the lots so bid off were taken over by others, who gave back mortgages, to be later interchanged with other securities. Such transactions, apparently known and fully understood by the members of this syndicate, furnish no ground at this late day to charge that the trustee made sales to dummies, or that the terms reported disguised the real transactions.

A more intricate matter is the handling of the mortgages. No less than twenty-two of the lot buyers' mortgages were turned over to Abraham B. Tappen, one of the vendors, as part of the general settlement. The attempts to show any concealment or suppression in this regard have wholly failed. These instruments were for the most part recorded. Such record may be the basis of an inference of notice of the transaction to each member of this syndicate so that their acquiescence for nearly a generation authorizes the conclusion that the properties so handled had been fully accounted for.

This appellant was not only a member of the original partnership, but was keen in her participation. In some instances she took the acknowledgments of these instruments. Had any of her rights been affected, it seems incredible that she should have remained quiescent during all of Judge Brady's lifetime. Had the trustee withheld his accounts, a different inference might follow. But where a minute and compre-

hensive statement of this land speculation followed almost directly after closing these titles, accompanied by checks in final settlement, a stronger case must be made to substantiate these charges of conversion of proceeds, when such misconduct was never hinted at within the trustee's lifetime.

I advise that the judgment be affirmed, with costs.

Present — JENKS, P. J., MILLS, PUTNAM, BLACKMAR and KELLY, JJ.

Judgment unanimously affirmed, with costs.